### Thomas Kelly *v.* Charles Kelly.

It is not necessary that a non-resident, bringing an action in the district or justices' courts of the city of New York, should commence his suit by warrant or "short summons" and give security. He may, if he so elect, sue by the ordinary summons.

An authority given by a party to his wife, to receive a sum of money for him, does not make the wife his agent, in such a sense that her subsequent declarations made respecting the contract or conditions upon which the money was paid, are admissible in evidence against him.

A mere agent to receive money cannot bind his principal by declarations relating to transactions antecedent to the payment, tending to show that the money received is not due. (*a*)

This action was brought in the Second District Court, by a non-resident of the city of New York. The ordinary summons was issued, returnable in seven days.

The parties appeared and joined issue, when the defendant moved for a dismissal of the complaint, on the ground that a non-resident could not sue in the justices' courts, except by means of a "short summons," issued upon the plaintiff giving security for costs. The motion was denied.

The action was to recover money alleged to have been lent by the plaintiff to the defendant. It was proved that money had been sent by the plaintiff to the defendant, but the latter

---

(*a*) See *Hyland* v. *Sherman, ante,* p. 234.

Kelly *v.* Kelly.

produced evidence going to show that it was in payment of a loan which had previously been made by him (the defendant) to the plaintiff's father-in-law, and which the plaintiff had agreed to repay.

The defendant kept a store, which was attended, in his absence, by his wife. It appeared that she had received money for him, and a witness was called for the plaintiff, who testified to her subsequent admission to that effect. The witness stated, that at an interview at his (the witness') store, " The wife said that if the money was not paid, she would pay it. " She said, that if Charles Kelly (the defendant) was not to get back the money he lent, she herself would pay · back the money."

These declarations were objected to at the trial, but the plaintiff, on the argument of the appeal, insisted, that in the uncertainty of their meaning they could not have influenced the jury before whom the cause was tried in the court below.

On these grounds, and others not discussed in the opinion, the defendant appealed, judgment having been rendered against him in the district court.

*Hiram Hunt* and *Theo. Stuyvesant*, for the appellant.

*Judah H. Hartt*, for the respondent.

By the Court. Woodruff, J.—I incline to think that the justice decided correctly on the motion to dismiss the action for want of jurisdiction. I find nothing in the laws regulating the proceedings in the assistant justices' courts for this city, prior to the act to abolish imprisonment for debt and to punish fraudulent debtors, (Laws of 1831,) making it necessary that a non-resident plaintiff should proceed by *warrant ;* he might do so if he gave the required security. The object of the provisions of the statute in this respect, was to give a privilege, and not to impose a restriction.

The short summons provided by section 32 of the act above referred to, is a substitute for the warrant, and cannot

be issued without security. But I do not perceive any thing in that section which requires the plaintiff to proceed by short summons; nor in any other statute which forbids a non-resident plaintiff from proceeding by the ordinary summons, as was done in this case. (See *Ackerman* v. *Finck*, 15 Wend. 652.)

But the justice erred, I think, in permitting the plaintiff to give in evidence the statements of the wife of the defendant. Her declarations are not evidence against her husband. It is suggested in the return, that they were received as a part of the *res gestæ*. I hardly perceive the point of the suggestion. The circumstances attending a transaction, the character and effect of which are controverted, are sometimes received in evidence, to the end, that the whole transaction, in its entire scope, may be exhibited; and declarations of the parties accompanying their acts are sometimes received, to show the intent and purpose with which the act is done, when that is material. But a declaration, made at another time or place, in no wise forming a *part* of the *transaction*, is not admissible on any such ground. In this case the wife had received money for her husband, and it is inferable, from his testimony, that she paid it to him or satisfactorily accounted for it. Had the person who paid her the money, declared, *at the time* of the *payment*, on what account or upon what conditions he made the payment, and her receipt of the money had been approved by the husband, those declarations by the paying party would, if it became material, be evidence of the terms and conditions on which the payment was made. But even such declarations would not be admissible if made at another time or place. They would then be mere hearsay.

In the present case, the declarations given in evidence bear no similitude to the example stated. It appeared that the wife had received some money from the defendant; where, or at what time, does not appear. The plaintiff was thereupon permitted to prove that upon a certain occasion, in the store of the witness, the wife made certain statements in relation

Kelly *v.* Kelly.

to the receipt of the money, &c., which the plaintiff deemed material to his case. I do not discover any principle upon which such declarations were admissible. It is suggested that she was the agent of the defendant, and so her statements were proper evidence. In the first place, it is only the declaration of an agent, made in the conduct of the business of his agency, that is admissible against his principal—not his rambling conversation in stores or elsewhere, when not so engaged. And, in the *second* place, the wife was not the defendant's agent in this case, so as to bind him by any admissions she might make.

It does not appear that she had any authority in the matter. Money was handed to her for her husband, and this is all. She no doubt performed her duty by delivering it, and there her agency began and ended. Her declarations were no more admissible against her husband than the conversation of the plaintiff's own servant with a third person, would have been, had the plaintiff sent the money to the defendant by such servant.

If it be assumed, or if it had been proved that the defendant's wife had express authority to receive the money for him, that would not make her subsequent declarations respecting the antecedent contract or the conditions upon which the money was paid, admissible as evidence against him. A mere agent to receive money cannot bind the principal by declarations relating to transactions *antecedent* to the payment, and tending to show that the money is not due.

I feel constrained to say, that upon the evidence, the verdict was a most extraordinary one, and if there was no objection to the proceedings, in point of law, I should still be inclined to reverse the judgment, as being not merely against the weight of evidence but as being *without evidence*. The jury appear to me to have been wholly diverted from the allegations it was necessary for the plaintiff to prove; and while these were not proved by any witness, the jury seemed to have *assumed* that they were true because the defendant was contradicted in respect to other statements. It no where

appears that the defendant borrowed any money from the plaintiff. Nor can I perceive any thing to warrant the inference, or even a suspicion that he did so, even if his own testimony be disregarded. Whereas, if his testimony be relied upon, his denial is explicit and unqualified.

It is suggested that the admission of the declarations above referred to, did not prejudice the defendant. It seems that the plaintiff thought them material to him on the trial; and although the answer of the witness is rather equivocal, and the meaning of the declarations proved is somewhat obscure, I cannot say in what sense the jury received them, or how far they were influenced by them. In one aspect they are unmeaning; in another, they seem to import that if her husband did not pay the money, she would—thus admitting his liability.

In any case it is dangerous to allow improper evidence to go to a jury, and it is very seldom we can say that their minds *could not* have been influenced by it.

Upon this ground, then, the judgment must be reversed.